[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
Plaintiff brings this administrative appeal under C.G.S. 4-183 from a decision of the defendant (1) finding that plaintiff had violated C.G.S. 19a-533, and (2) imposing two "rate sanctions." The defendant's finding and the imposition of the sanctions were based on defendant's conclusion that plaintiff has discriminated against indigent people in its admission policy. CT Page 966
On July 25, 1990 the court finally received the "three volumes" in defendant's certification of January 4, 1989.
FACTS
Plaintiffs operated a "nursing home" (the Home) within the meaning of C.G.S. 19a-533 (the Statute) during the relevant times for this action. It was licensed for 120 beds.
Since about 1976 any person calling or visiting the Home to inquire about admission would first be asked to supply basic information on the Home's admission/application form. The person would then be asked to tour the Home during which further information about the person requiring care would be obtained and an application completed.
Starting in 1980 the Statute required the Home to maintain a waiting list of applicants for admission. In 1984, following enactment of an amendment to C.G.S. 19a-533, the Home began issuing receipts to each applicant for admission to its facility upon completion of the tour, interview and application.
In July 1985, Dr. Bernard J. Podurgiel inspected the Home for defendant and inquired about the Home's admission policy. He learned the Home maintained both a waiting list of applications for admission and an inquiry list reflecting inquiries about the admission to the Home. At that time the Home issued waiting list receipts only when applications for admission were completed and not on the basis of inquiries alone.
Dr. Podurgiel reported his findings to defendant but it took no enforcement action at the time. On January 24, 1986 a regional ombudsman, Meredith Savage (Savage), visited the Home to investigate whether the Home still utilized the policy found by Dr. Podurgiel. Her visit confirmed the substance of the receipt policy. Savage works for the Connecticut Department of Aging. On or about April 15, 1986 the defendant notified the plaintiff by letter that it had violated the Statute on two occasions by
 "implementing a policy of refusing to provide receipts to applicants for admission who request placement on the waiting list until the applicant or his agent personally visited the facility."
It also told plaintiff that it intended to impose the rate CT Page 967 sanctions.
Plaintiff denied any violation and requested a hearing which was held on June 13, 1986. Due to certain transcript defects a de novo hearing had to be held on March 6, 1987. This hearing aborted and a de novo hearing was held March 27, April 3 and April 23, 1987. On May 26, 1987 the hearing officer issued his decision in which he made findings of fact, reached conclusions of law and issued an order.
The court finds aggrievement.
LAW
I. Constitutionality
The plaintiff has failed to sustain its heavy burden to prove that the Statute or its implementation are unconstitutional. Gunther v. Dubno, 195 Conn. 284, 291.
II. Statutory Interpretation
C.G.S. 19a-533, for our purposes, is P.A. 80-364 as amended by P.A. 84-245. In regard to regulations, we would be concerned only with those in effect before August 16, 1988 but there are none claimed.
The 1984 amendment reads as follows:
 "Each nursing home shall (A) provide a receipt to each applicant for admission to its facility who requests placement on a waiting list stating the date and time of such request and (B) maintain a dated list of such applications which shall be available at all times to any applicant, his bona fide representative, authorized personnel from the departments of health services, income maintenance, aging and such other state agencies or other bodies established by state statute whose statutory duties necessitate access to such lists."
Although phrased slightly differently by each of the parties, the question for the court is:
Does the statute forbid a nursing home from requiring an on-site visit before an application is accepted?[1]
There is nothing in our statute about mailing receipts to applicants. This court cannot reasonably read the CT Page 968 statute which requires a nursing home to "provide a receipt to each applicant" to mean "in hand", by mail, by "fax" or any specific method. This is particularly true when the "B" section of the 1984 amendment is read. In the 1980 law we have the expressions "persons who apply for admission," "requests for admission," and "persons requesting admission." Sec. 2(1) and (4). In the 1984 amendment we have the expression "each applicant for admission who requests placement on a waiting list." From that it would seem we have at least three categories of persons making inquiries. First, we have people who call or visit and make an inquiry, whether it be about admission to the Home, being placed on a waiting list or some question of accommodations. Second, we have those who call or visit and "apply for admission." Third, we have those who not only apply for admission but also request placement on a waiting list for such applications.[2]
Although "requesting admission" is not exactly the same as applying for admission, the court reads the two in this instance as functionally equivalent.
The 1980 statute seems to expect interested persons to go to the Home before making an application for admission because the statute requires posting of a notice to the applicants in a conspicuous place. This means on the premises of the Home and thus the inquiring person is expected to visit the Home. That notice requirement was not amended in 1984. There is no statutory requirement that an inquiring person be told orally or in writing about the prohibition against discrimination. From all of that it could be concluded that a visit is expected by the statute.
The court naturally gives serious consideration to the Opinion of the Attorney General of April 13, 1988, Windham Community Memorial Hospital v. Willimantic, 166 Conn. 113,118, however, there is no violation of the statute by virtue of plaintiffs requiring visits to the Home during the period in question.
There being no basis in law for the hearing officer's orders, they are void.
Judgment for plaintiff.
N. O'NEILL, J.